UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| JOHN CHAPMAN, | ) | CASE NO. 14-20679 (ASD) |
| | ) | |
|     DEBTOR-IN-POSSESSION. | ) | |
| | ) | |
| JOHN CHAPMAN, | ) | ADV. PRO. NO. 14-2035 |
| | ) | |
|     PLAINTIFF, | ) | |
| vs. | ) | |
| | ) | |
| CA HEBRON, LLC AND | ) | RE: ADV. ECF NO. 7 |
| COUNSELING AFFILIATES, LLC, | ) | |
| | ) | |
|     DEFENDANTS. | ) | |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS AND ORDER DISMISSING THE COMPLAINT**

**I. INTRODUCTION AND BACKGROUND**

On April 8, 2014, John Chapman (hereinafter, the "Debtor") commenced Bankruptcy Case No. 14-20679 by the filing of a voluntary petition pursuant to Chapter 11 of the United States Bankruptcy Code. It appears that the Debtor who has been working for the State of Connecticut as a psychologist for approximately 23 years commenced this bankruptcy case as a result of a dispute with his partners in a side business in which he was engaged, entitled CA Hebron LLC & Counseling Affiliates, LLC.

On June 23, 2014, the Debtor filed *Objection to Claim #3-2 Filed by Counseling*

1

*Affiliates, LLC,* ECF No. 37,[1] and *Objection to Claim #4-1 Filed by CA Hebron, LLC,* ECF No.38 ( hereinafter, together, the "Objections,"), objecting to Proof of Claim #3-2 filed on behalf of Counseling Affiliates, LLC (hereinafter, "Counseling Affiliates") and Proof of Claim #4-1 filed on behalf of CA Hebron, LLC (hereinafter, "CA Hebron"), respectively, in their entirety on the sole grounds that said claims were "unsecured, unliquidated, contingent and disputed." On July 23, 2014, CA Hebron and Counseling Affiliates filed written replies to the Objections (hereinafter, together, the "Replies"), ECF Nos. 48 and 50, respectively. A hearing on the Objections and Replies was held before the Court on July 31, 2014 (hereinafter, the "Hearing"), incident to which the Court ordered the Debtor to particularize his Objections, and refile them in the form of a complaint commencing an Adversary Proceeding.

In accordance with the Hearing record, on August 7, 2014, the Court, entered a *Pre Trial Order*, ECF No. 57, setting, *inter alia*, September 8, 2014 as a deadline for the filing of such a complaint. The Debtor, on September 9, 2014,[2] commenced this Adversary Proceeding (No.14-2035) by the filing of a three-count complaint (hereinafter, the "Complaint") against CA Hebron and Counseling Affiliates (hereinafter, together, the "Defendants").  Count Three of the Complaint, in the form and general substance of the Objections to the claims of the Defendants as originally filed in the Debtor's Bankruptcy Case,  and consistent with the Hearing record insofar as the Court required prosecution of the Objections in the form of a complaint, seeks "disallowance" of the Defendants

---

[1]Hereinafter, "ECF No.___" refers to the docket of Case No. 14-20679; "Adv. ECF No. ___" refers to the docket of Adversary Proceeding No. 14-2035.

[2]The Docket of Adversary Proceeding No. 14-2035 reflects that the Complaint was filed September 9, 2014. *See* Adv. ECF No. 1. It appears that the Debtor, on September 8, 2014, erroneously filed a Complaint in Case No. 14-20679. *See* ECF Nos. 60 and 61.

claims, see Complaint, Prayer for Relief, ¶3, alleging,

> The Proofs of Claim filed on behalf of the Defendants (specifically Claim Nos. 3 and 4) must be disallowed as said claims are contingent, unliquidated, disputed and otherwise recoverable by the Plaintiff under 11 U.S.C. §542.

Complaint, Count Three, ¶24.

However, by and through Counts One and Two of the Complaint the Debtor expanded well beyond his claim disallowance objective by also seeking the additional relief of monetary damages for breach of contract (Count One), and a turnover of the fair market value of certain assets (Count Two).[3]

On October 10, 2014, the Defendants filed their *Motion to Dismiss Debtor-in-Possession/Plaintiff's Complaint* (hereinafter, the "Motion to Dismiss"), Adv. ECF No. 7, seeking dismissal of the Complaint for "failure to state a claim upon which relief can be granted," pursuant to Fed. R. Bank. P. 9012(b)(6). Motion to Dismiss, p. 23. The Motion to Dismiss seeks such relief primarily based upon the holding in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (noting, *inter alia*, in order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As discussed in more detail hereinafter, the Court, having accepted the facts alleged in the Complaint as true for purposes of resolving the Motion to Dismiss, determines that the Motion should be granted as each of the three Counts in the Complaint.

---

[3] While not raised by the Defendants, in filing the Complaint and including therein claims that appear to the Court cannot be fully disposed of in determining the objection to the Defendants' proofs of claim, the Plaintiff may have run afoul of the constitutional limitations upon the Bankruptcy Court as a non-Article III court to enter a final judgment on state law claims. *See Stern v. Marshall*, 131 S. Ct. 2594, 2671-2618, 180 L. Ed. 2d 475 (2011).

## II. DISCUSSION

### *A. Count One (Breach of Contract)*

In the First Count of the Complaint, the Debtor seems to be arguing that his former partners breached certain Operating Agreements (hereinafter, the Agreements")[4] by not allowing the Plaintiff to withdraw voluntarily from the Agreements and buy out the Plaintiff's interests as required under Section 4.5.2, of those agreements. (¶19-21).

However, the Agreements do not allow for a member to voluntarily withdraw and be paid his interest. The relevant sections contained in each Agreement provide:

Section I. *Defined Terms*

*"Interest"* means a Person's share of the Profits and Losses of, and the right to receive distributions from, the Company.

*"Interest Holder"* means any Person who holds and (sic) Interest, whether as a Member or as an unadmitted assignee of a Member.

*"Involuntary Withdrawal"* means, with respect to any Member, the occurrence of any of the events set forth in C.G.S. Sections 34-180(a)(3)(A), and (a)(4)-(11).[5]

*"Voluntary Withdrawal"* means a Member's dissociation with the Company by means other than a Transfer or an Involuntary Withdrawal. ·

---

[4]Specifically, a document captioned "Operating Agreement of New Counseling Affiliates, LLC LIMITED LIABILITY COMPANY OPERATING AGREEMENT" entered into as of January 22, 2008, and a document captioned "Operating Agreement of CA Hebron, LLC LIMITED LIABILITY COMPANY OPERATING AGREEMENT" entered into February 20, 2008.

[5]Section 34-180 (Events of dissociation) provides in relevant part:

(a) Subject to subsection (b) of section 34-173, a person ceases to be a member of a limited liability company upon the occurrence of one or more of the following events: . . . (3) the member is removed as a member (A) in accordance with the operating agreement. . . ; (4) unless otherwise provided in writing in the operating agreement or by written consent of all members at the time, (11) where the limited liability company is formed to render professional services, a member licensed or otherwise authorized to render professional services in this state or any other jurisdiction ceases to be so licensed or authorized.

\* \* \*

Section IV. Profit, Loss and Distributions

4.2. *Allocation of Profit or Loss.* Each of the Members will bill patients and third parties for the services they perform on behalf of the Company. Each member will receive a percentage of such receipts for their services as may be agreed to by the Members from time to time. The initial percentages are listed on Exhibit B to this Operating Agreement. To the extent that there is insufficient profit from operations to allow for such payments to the Members the amount due to all shall be reduced proportionally. After giving effect to the special allocations set forth in Section 4.3., for any taxable year of the Company, for those tax years· where there is a Loss, such Loss shall be allocated to the Interest Holders in proportion to their Percentages. For those tax years for where there is a Profit after payment of the Percentages listed on Exhibit B to this Operating Agreement, such Profit shall be allocated to the Interest Holders in proportion to the percentage of gross receipts (excluding Consulting Revenue) for such tax year that the member contributed to the Company in comparison to the other members. By way of example Profits would be shared 20% to a member who brought in $2000 of gross receipts in a year where the gross receipts for all members combined was $10,000.[6]

\* \* \* \*

4.4. *Liquidation and Dissolution.*

    4.4.1. If the Company is liquidated, the assets of the Company shall be distributed to the Interest Holders in accordance with the balances in their respective Capital Accounts, after taking into account all contributions, distributions, and allocations for all periods.

\* \* \* \*

4.5. *General.*

4.5.1. Except as otherwise provided in this Agreement, the timing and amount of all distributions shall be determined by the Members.

4.5.2. If any assets of the Company are distributed in kind to the Interest Holders, those assets shall be valued on the basis of their fair market value, and any Interest Holder entitled to any interest in those assets shall receive

---

[6]Paragraph 4.2 as quoted only appears in the Counseling Affiliates LLC 's Operating Agreement. Paragraph 4.2 in CA Hebron provides, "Allocation of Profit or Loss. After giving effect to the special allocations set forth in Section 4.3., for any taxable year of the Company, profit or Loss shall be allocated to the Interest Holders in proportion to their Percentages."

5

that interest as a tenant-in-common with all other Interest Holders so entitled. Unless the Members otherwise agree, the fair market value of the assets shall be determined by an independent appraiser who shall be selected by the Members. The Profit or Loss for each unsold asset shall be determined as if the asset had been sold at its fair market value, and the Profit or Loss shall be allocated as provided in Section 4.2 and shall be properly credited or charged to the Capital Accounts of the Interest Holders prior to the distribution of the assets in liquidation pursuant to Section 4.4.

Section VI. *. . . .Withdrawals of Members*

* * * *

6.2. *Voluntary Withdrawal.* No Member shall have the right or power to Voluntarily Withdraw from the Company, except as otherwise provided by this Agreement.[7]

6.3. *Involuntary Withdrawal.* Immediately upon the occurrence of an Involuntary Withdrawal, the Withdrawn Member, or the successor of the Withdrawn Member, if any, shall thereupon become an Interest Holder but shall no longer be, or shall not become, a Member. The successor Interest Holder shall have all the rights of an Interest Holder; however, in such event, neither the Withdrawn Member nor the successor Interest Holder shall be entitled to payment for the Withdrawn Member's interest in the Company as of the date the Withdrawn Member Involuntarily Withdrew from the Company.

Section VII. *Dissolution, Liquidation, and Termination of the Company*

7.1. *Events of Dissolution.* The Company shall be dissolved upon the written consent of a majority of the Percentages held by the Members.

Under ¶6.2 of the Agreements the Debtor did not have the right to voluntarily withdraw from the Agreements. Therefore, there was no breach of contract on the part of the Defendants for the Defendants alleged failure to permit him to withdraw.

Further, while not raised or addressed by the Debtor or the Defendants, under Conn. Gen. Stat. §34-180(a)(4)(B) and (D), the Debtor may have ceased his membership

---

[7]*See, e.g.*, Conn. Gen. Stat. §34-180(c) "*Unless the operating agreement provides in writing that a member has no power to withdraw by voluntary act from a limited liability company*, the member may do so at any time by giving thirty days' written notice to the other members, or such other notice as provided for in writing in the operating agreement." (Emphasis added).

involuntarily when, "unless otherwise provided in writing in the operating agreement or by written consent of all members at the time, the member . . . (B) *files a voluntary petition in bankruptcy*, (C) is adjudicated a bankrupt or insolvent, (D) files a petition or answer seeking for himself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation. . . ."(emphasis added).

Nevertheless, while under the provisions of the Agreements, the Debtor's removal as a member gives him the rights of an Interest Holder, *see* ¶6.3, including the right to profits as of the date of such involuntary withdrawal, *id.*, that only applies *if he has performed as required*, which it does not appear he has – *see* ¶4.2.

Thus, as to Count One it appears to the Court that the Debtor has failed to state a claim to relief that is plausible on its face. Accordingly, Count One shall be dismissed.

### *B. Count Two (Turnover of Property)*

As to Count Two of the Complaint, the Debtor has failed to cite any section in the Agreements that entitle him to a turnover of any property, and none appear to exist. While there may be an accounting that must be made in light of an involuntary termination of his membership by virtue of the commencement of this bankruptcy case, that issue is not the subject of Count Two.

Thus, as to Count Two, it appears to the Court that the Debtor has failed to state a claim to relief that is plausible on its face. Accordingly, Count Two shall be dismissed.

### *C. Count Three (Claim Disallowance)*

As noted earlier in this Memorandum of Decision, on July 31, 2014, the Court provided an opportunity to the Debtor to remedy a procedural deficiency in connection with

his Objections by refiling them "in the form of a Complaint as an Adversary Proceeding." The Debtor complied through the inclusion of Count Three in the instant Complaint. However, the Court also Ordered that the Complaint be particularized as to the basis for the such claim disallowance.

In that regard, the original Objections filed in the case simply asserted the Counseling Affiliates and CA Hebron proofs of claim to be:

"unsecured, unliquidated, contingent and disputed."

ECF Nos. 37 and 38.

Count Three of the Complaint simply alleges those same claims to be:

"contingent, unliquidated, disputed and otherwise recoverable."

The language of Count Three alone adds no particularity to the claims allowance calculus. Nevertheless, it appears that the Debtor may have intended to comply with the particularization requisite by adding Count One and, possibly, Count Two. Those Counts, however, have been dismissed herein for the failure to state claims plausible on their face. Any particularity added by Counts One and Two lend no support to his Count Three; in fact, that particularity defeats Count Three.

### III.  CONCLUSION AND ORDER

For the reasons discussed above, and in light of the Court's determination that as to each of the three Counts in the Complaint the Debtor has failed to state a claim to relief that is plausible on its face,[8]

---

[8] It unnecessary for the Court to determine whether other grounds asserted as a basis for the dismissal of the Complaint by the Defendants have merit. However, the Defendant's request for dismissal on the basis of the Plaintiff's alleged "bad faith" would require an evidentiary hearing and is not otherwise appropriate for consideration under Rule 12(b)(6).

**IT IS HEREBY ORDERED** that the Motion to Dismiss is **GRANTED**, in accordance with which

**IT IS FURTHER ORDERED** the Complaint is **DISMISSED**.[9]

Dated: March 30, 2015                                                        BY THE COURT

*Albert S. Dabrowski*
United States Bankruptcy Judge

---

[9] The Court is fully cognizant that under existing case law and Fed. R. Civ. Pro. Rule 15(a) (2), made applicable to bankruptcy through Fed. R. Bankr. P. 2015, "[t]he Court should freely give leave to amend pleadings when justice so requires," and, in accordance therewith often conditions dismissal orders on an opportunity to amend the underlying pleading. But here upon determination that the Objection was procedurally deficient the Court previously guided and directed the Plaintiff to correct that deficiency by commencing an Adversary Proceeding. Moreover, as the objection lacked the requisite particularity to survive in the form of a complaint, the Court instructed the Plaintiff to include that particularity in any complaint filed. However, assuming particularity has been added by operation of Counts One and Two, its only effect is fatal to Count Three. Accordingly, in the interest of preserving the valuable time and resources of this Court, as well as the Plaintiff's, the Court declines to act *sua sponte* and attend the dismissal of the Complaint with what would be another opportunity to amend it.